We have a couple of cases on the docket for the afternoon. The first is cause number 15-41637, United States of America v. Valentin Muniz-Saavedra. So the appellant is ready. Is the appellee ready? All right. Appellant, you may proceed. I come before you today on behalf of Mr. Muniz-Saavedra on two issues, basically. I was the trial lawyer in the case, and so I'm prepared to discuss any of my recollection of facts from the record. Basically, we had an issue that was ongoing since before trial, in essence, and that was whether or not his personal use of cocaine should be admitted against him in a cocaine smuggling case. Basically, what Mr. Muniz said was, well, I was tricked into driving this car across the border. It had cocaine and also methamphetamine in it. I did not know that. I had been asked by these people to do other favors for them, and so it was allowed, and so that's the reason I did it. And that was his position all the way through. There was never any direct evidence of his knowledge, of any knowledge that there were drugs in the car that he was bringing across. It wasn't his car. And one of the issues then that I anticipated would come up, and it came up over and over again through the trial, was whether or not his personal use of cocaine, which he had a history of. How do you say you anticipated that the government filed a notice, a 404B notice, that it was going to introduce that evidence, didn't it? No, I don't believe they did, Judge. Then why didn't you object? Well, I did file Rule 104 motion to exclude it, Your Honor. I did. Well, you waited until your reply brief to raise this. They didn't file the proper notice, and that's generally too late to do that. Well — And you didn't — there's no 404B notice in the record. I don't know why there's not one there. If the government says it filed one, I don't know why it's not in the record, which is — doesn't reflect favorably on either one of you. And then when he testified, you went into his drug use as well. You called him — you called him, and he testified about his drug use — He did. — after the government had introduced it. So that cuts against its not being harmless I don't understand this 404B procedural aspect of this trial. Well, let me address it, Judge. I knew, of course, that they anticipated or they were planning to call because I had read the discovery ahead of time. And there was an agent named Mejaios who, at length, opined that, well, he sniffled, and therefore I knew he was a Now, I did not realize that it had not — and there's — in the record, I tell the court, you know, I'm not raising the issue of the failure of notice. I didn't even realize until they wrote their brief that it had not — notice had not been given because I had knowledge of it. But I was — once they laid that out there, that's the reason I raised it. Now, I feel like I — What is it you had knowledge of? I knew. I knew that his personal use of cocaine was an issue in the case. Why? Well, because they gave me a discovery where that was the emphasis that the agent had made in the discovery. And the agent testified before my client did. And so he — You got discovery that they had to give you with him his statements. They gave you the Your Honor, there is no notice issue on the 404B. That's correct. That's as close to notice as you can get. Well, I know that, Judge. And I — that's part of the reason. Then you go on and say, we agree it's relevant to motive. You tell the district court, I'd like an instruction that it's limited use to motive only. Yes, but that was not an admission that it was relevant to motive, Judge. I've maintained throughout that it does not show motive. That was subsequent to the determination that it was going to be you. That's right. It had been found against me at the Rule 104 hearing before trial. I had objected to it and had been overruled. The agent had already testified to it. And it was that stage that I was trying to explain from his point of view why he had done that. So your legal position is prior use is never relevant on the first prong? It's not relevant to motive, intent, knowledge? Well — Or your position — what are you asking us right now? I'm urging that it's not in this case relevant. The one case that I talked to the trial judge about where they said it was relevant, he said, well, he has a terrible cocaine addiction and he needed the money. But that's not this case. And so I would urge that — Who talked to the trial judge about that case? Pardon me? You said the one case they talked — who talked to the trial judge about that case? I did. I brought it up when I was arguing to the trial judge not to admit this. So it was your view that the cocaine use, if relevant at all, would have been relevant on the motive? And the motive is to get the money to buy more cocaine? My position was that motive did not exist in this case. So you — I'm just trying to figure out who's arguing — because in my mind, every drug deal is motivated by money. That's the reason people sell drugs, is to get money. So where did the notion originate in this case that use of cocaine was relevant to the motive, with the motive being to make money on buying the drugs? Well, I was trying to exclude that theory, Judge. When I said that, I said, Judge, Your Honor — So you were excluding a theory that hadn't been introduced? Yes, I was. All right. The balancing happens right before Laura testifies, Agent Laura. And it's in that balancing process you say I found one case and that was limited to motive and I would like an instruction saying relevant only to motive. Court says I'll give it. I got the limiting instruction, but my first position was that it was not relevant at all. I wanted it kept out. I mean, that was the nature of my 104 motion ahead of time. And the limiting instruction you got is the one you wanted? Yes. The limiting instruction I got — And that instruction didn't say anything about — it told the jury what they couldn't consider it, the purpose for which it could not be considered. Is that right? Character, yes, Your Honor. But it didn't say anything about the purpose for which it could be considered, did it? No, Your Honor. I mean, I wanted to — But he gave them verbatim your instruction saying it could be considered for motive, financial motive. Well, I'm having trouble remembering. Well, I'm going to look at it. I've got it in the brief here. Well, let me read it. We would ask for a limiting instruction on the fact that it should be admissible based on a finding of motive. And you want to say solely for the issue of motive in this case. Court gives it. That's at record 644. I'd lost the fight, and I was trying to limit its use, and I argued that later. That's a complicated picture for me. But the legal position you're asking us to say here is in this case only, the prejudicial value substantially outweighed that motive that you asked an instruction for, or you're saying it can never come in for any 404b1 first prong? No, I think there are some times when it could be relevant for 404b1. So you're really making a second prong. Assume the limited relevance of motive that they were told, the jury. Here, the prejudice substantially outweighed that motive. That's my second position, Judge. But I'd never have given up on it, in this case, not being relevant, because this guy was not the heat. I agree with Judge Graves that greed is the basis for the smuggling, and that's not this guy. In most of these cases, it does come in for motive. You're charged with a 922 due, possession of gun. It comes in because people who have drug users need protection. Or the charge is burglary, and the prior comes in because you're stealing money to feed your habit. So motive is a frequent reason this comes in. You're saying that motive was never urged by the government here. That's correct. But what they did urge, and they urged it very clearly at closing, was this man admitted he had a personal use. Who was his supplier for personal use? Fernando. Who introduced him to the smuggler? Fernando introduced him to Mario. In closing, they tied that knowledge relevance. How did he know the conspiracy he was charged with? The guy that he said gave him drugs for his personal use introduced him to the guy who asked him to smuggle. That sounds like knowledge. Well, that makes a connection but not knowledge, Judge. I mean, Fernando, who was out of the picture by the time we were in trial, we would urge, yes, he was selling to him. But that doesn't take us to the next step. You've got to prove that your client knowingly participated in the conspiracy. Correct. Your client admits to him that he's getting drugs from Fernando. Your client is introduced to Mario the smuggler through Fernando. And then the jury acquitted on both the conspiracies. They may have, but that doesn't mean you can work backwards and say it's not relevant to knowledge. Well, I would urge that in this case it just did not come up. Speaking of in this case, I noted basically a total lack of precedent cited by you on the point of use cannot be used to show motive. And apparently our circuit has voluminous precedent on this, and you didn't cite any of it to us. Well, I went back to the Beecham case, which I felt like supported me. Now, I have carefully reviewed the cases that have been decided since I wrote the brief, and none of them allow reversal. But I would urge that in all of them there is a pretty big difference between what we have. And none of them allow reversal because if they do find it was improper, they do find harmless error? Is that why they don't allow reversal? Well, most of them, they concede relevance to begin with. And then they do often find harmless error. But most of them involve other acts or other crimes that, as you were describing it, forwarded the offense, the possession of the guns used in the offense. One of them was a SETA case where the possession of the guns were used in the drug business. One was sex with underage girls in a sex trafficking case. All of them, one of them was an earlier transport of ammunition. One was other false tax returns. They were either identical offense or something that would further the offense they were charged with.  This is not Scarface where the businessman is also the drug dealer. This is a different kind of division where the drug dealers are not necessarily users at all. They're in it for the business. And then we've got ---- You're not saying per se rule never admissible. You're saying here very little relevance is to motive, arguably as little as to knowledge, substantially outweighed. But you can't give us a case where a circuit court is reversed on that second prong? I would just ---- Well, I think Beecham did, which was the ---- is in the brief. And ---- When you say you can't ---- Beecham. Yes, Your Honor. Well, Beecham was a postal worker, wasn't he? A postal worker who was robbing the mail? Yes. Yes, Your Honor. Well, and in that case, he had a ---- his defense was that this coin that they found on him, the one they had planted, his defense was that he was going to get around to turning it in. And at the same time they discovered that, they discovered credit cards in his wallet that had to have been there for eight months or more. So that undermines your ---- all the stuff that I shouldn't have, I'm going to get around to turning it in, so I didn't mean to keep it. So it made a lot of sense in Beecham then to admit the evidence of his possession of the credit cards, which is evidence of another prior bad act. That seems relevant. But I'm having trouble connecting relevance up in this case, which I guess you are. Well, that's been my view from before trial, Judge. That's the reason I tried to keep it out. Maybe I'm not ---- apparently I was not articulate enough for the trial judge to get there. But it's a different kind of animal. We've got Mr. Muniz-Cevedra. Did they say at the trial that they wanted that admitted for purposes of showing that the motive was to make money to buy more drugs? No. His theory, Mr. Ponce's theory was that it should be admitted because the possession of cocaine is another crime, and someone who will commit that crime will commit a smuggling crime. That's what he says. And to me that's just pure character. Sounds like . . . that's what it sounds like. You've got ten seconds. You don't have to use them. Well, look at my second point too, please. Yes, sir. That's all I said. Thank you. May it please the Court. This case is about motive. And Mr. Muniz wasn't exactly an ordinary person we see in a drug trafficking case. He had been gainfully employed for many years as a welder. In fact, that's one of the things he told the agents at the bridge to give himself a lot more believability, that he was a welder at the Port of Brownsville. So motive really was at issue here. Why would a person with a great job be involved in drug trafficking? And, of course, he said from day one, I did not know the drugs were in there. Motive is sort of intertwined with intent and knowledge in this case. And if you look at the Kenshin case, which is, I think, this case is seminal authority . . . So was he gainfully employed at the . . . He was not. That was actually a bit of one of the falsehoods he told them. He had been for eight or nine years. At the time he was on the bridge, he was unemployed. He didn't tell them that until later. So the need for money was very much at issue here. And, again, this was a . . . the facts and circumstances here are a little bit different. And also his . . . I mean, that was sort of one of the cornerstones of his defensive theory is, I'm a good guy. Why would I ever agree to bring drugs over? I was just doing a favor for my friend who bought me breakfast. I'd only known him a month, but . . . and so that was his defensive theory. Roberts. There's no formal 404B notice in the record. There is not a formal 404B notice in the record. Had there been, a lot of the difficulties, intra-circuit and inter-circuit might have come out. You wrote a long brief, too, but as I remember, you only gave one paragraph on relevance. And the case you were about to start talking about, Kenshin, is the single case that you really gave us there. Kenshin is a prior conviction case. It's conviction and it's also his admission that he sold drugs. True. But this . . . in this case, the agent is describing to the jury that the man has physical characteristics that show that he abuses drugs. Correct. And his own admission when they ask him. Well, that's . . . but that's very different. You're getting very close to bad character evidence. And if you're saying it's relevant to motive, what can you quote in the government's closing that limited the use to motive? Did you ever even say you heard evidence that shows motive? In the closing? In the closing argument. The government, how did the government use the prior? Well, let me, I know he did mention Fernando. He ties that all in. That's how he got the motive. That's not motive. That's not motive. So the problem with 404B is you have to say very narrowly what it's relevant for that's permissible. And then in closing, you can't stray from that. You can't think, well, we've got it in, now we can use it to dirty the guy up. I agree, Your Honor. Okay. So here, isn't it true that in closing that the prosecutor said you heard that he lied to his wife about being a drug user himself? I don't think he said he lied to his wife. What they were talking about is the jail calls. And she's . . . And his wife said take a test. Yes. And then the government in closing said you heard he uses drugs, so he couldn't do what his wife wanted him to. I don't think that's what he said, Your Honor. What he said was . . . If that is what he said, would you agree that that would be impermissible 404B argument? Well, maybe, but that's not what was said. I can read you. It better be important that that's not what he said, then. Well, let's look and see what he said. The information concerning the previous incidents of cocaine use, well, that is in here, as the Court indicated. As you heard his testimony, that he quit in early July, about two months before this happened. And yet, you can see for yourselves what the agents saw that evening. That's a reference to the video at Trevino's restaurant that they went and got. Why don't you not annotate for us? Just keep reading what the government said. Okay. Let me keep going here. You see for yourself what the agents saw that evening. That was a reference to the video. And why the agents didn't ask him about it. Something that he himself hadn't even told his wife. His wife is pleading with him. Hey, take the anti-doping. Take the anti-doping. That comes from the jail calls, Your Honor. That comes from the jail calls between these. You're annotating again. But go ahead. Okay. Well, I'm just trying to explain where that comes from. He didn't make that up. When does the government ever say, you heard prior drug use and that shows motive to commit the instant crime? I don't see the word motive in the closing argument. I know it was. And I guess that's what concerns me because other than the other side, I don't remember counsel's name and I apologize, mentioning that he brought it up to exclude a theory about motive, which apparently had not been introduced. I'm trying to figure out when the government ever connected prior drug use to motive and motive, he was motivated by his prior drug use to do, to sell drugs, to get money to buy more drugs. I'm trying to connect all this up to some motive that makes it admissible. And I'm trying to figure out when the government connected it up at trial to convince the judge to admit it. I think the trial AUSA talked about it in terms of intent and knowledge. I think that was his main thrust. I don't know that he ever said the word motive. You cite in your brief the McDonald case. Correct. That case explicitly says it can't come in for use for knowledge, correct? Well, it said it couldn't in that case. McDonald, I think, was a case where it was another border case, and he came in and he had some stuff that he claimed he didn't know anything about, which is similar to here. It was in the gas tank. And basically the government also contended it was relevant to determine guilty knowledge. And what did Judge Higginbotham write? Did he say? He said not in this case because what he admitted to, he admitted to using speed and methamphetamine in the past. And there was really no quantification of when or I think that was all that was said. In this instance he had used cocaine, what, within six weeks prior to being arrested? By his own admission it was six weeks. And as I understand it, at closing the government didn't mention the use in its opening closing argument. The defense counsel brought it up in his closing argument, and then in rebuttal that's when the government addressed it again and at the very end linked him with Fernando. Yes, correct. And, of course, the things that the agent saw were just a few hours after his arrest. So that was contemporaneous.  From evidence of past cocaine and speed use to an inference that he likely knew his car contained marijuana on that particular day. And I don't think you have that same exact concern here. What are we not leaping from here? I'm sorry? What are we not leaping from here? Why isn't it a leap? It's just a step. Well. What's the step? I think the concern in McDonald was we didn't know. He said it was in the past. We don't know when that occurred. Here it's pretty contemporaneous. The agents see what they see. They not only see it in the car, they see it also later on the video when they go get the video at Trevino's restaurant. Then when the defendant is questioned at trial, he says he's been using cocaine since the 1990s. Correct. He admitted he had had a big problem back in the 90s that he had mostly cleaned up but that he still sporadically used cocaine. So evidence of use of cocaine is evidence that he uses cocaine. Well, again, it's evidence that you have an expensive habit that you can't pay for when you're laid off and you're getting unemployment and public assistance. But that's the financial motive argument. That's not knowledge. Now you're back, but the government never restricted it to that. That's true, Your Honor. But, again, I think that motive, intent, and knowledge are all intertwined in this particular case. What would be your limiting principle then? If greed always allows prior use to come in in any charge of any nature, will prior use under your theory always be admissible? No, I don't think so, and I don't think that's . . . So what's the limiting principle? Well, Judge, it's the wide discretion of the district court who is there, who sees all the evidence, who sees the credibility or assesses credibility and is going to be doing this balancing test. I think the test works well. It does work when the government gives 404B notice and then you have a formal balancing. In this case . . . Judge Togliatti did say specifically, she did say that she found the probative value was not outweighed by any danger of . . . Was that in response to the 104B motion that defense counsel filed? That was, I believe, she made that ruling at the final pretrial. I think it was the morning of the day this agent testified. And as far as the notice, again, I know that February the 4th, I believe it was, was the first pretrial they had, and they were discussing this 404B. And it was clear both parties knew about it. And again, on February 24th, the final pretrial, as you referenced, Judge Higginson, Mr. Chapleton said, I got notice. I'm not contesting notice. The trouble, again, is just this is an area of vital importance in frequency, prior drug use or convictions admissible or not under 404B. It's a hugely consequential issue. Yes. And unless you may or may not know, there's a circuit split. Other circuits describe us as allowing it. Are you familiar with that? I'm not sure that's fair. I think we have several cases that I've cited where this Court said that might not have been proper or wasn't proper but then went on to the harm analysis. I don't think that would be fair at all. No, I didn't say it. Harmlessness is a totally separate issue. Other circuits have said that the Fifth Circuit has a bright line rule that it's admissible. At least that's what other circuits have said. You may shake your head, but it doesn't help when there isn't any briefing before and your 62-page brief gives us one paragraph on relevance. But it's an extremely important issue. I agree. So how would you describe our Fifth Circuit law on prior convictions or prior use evidence? Not a bright line rule? I don't think it's a bright line rule at all. That astonishes me. Again, you look in McDonald and it says you shouldn't have let that in. That's a knowledge case. That was a no knowledge case. We have the Cook case, which was unpublished. In that one they said, well, it was slightly different circumstances there, but it was a prior cocaine possession and prior cocaine use. And this court just kind of said, well, if we were to find error, and they just kind of skipped over and went to harmlessness. But I don't think that's a bright line rule. Could we say it was harmless here if we found that it was error? I do believe it's harmless. But the government has very little evidence showing knowledge of the drugs. I disagree. Well, what did you have besides his statements about being a drug user and Fernando connecting to Mario that showed that beyond a reasonable doubt he knew there were drugs there? Well, Judge, a no knowledge court of entry case is always circumstantial. And what do we have here? We have him lying to agents almost from the very moment he opens his mouth on the bridge. He lies about where he got the car. He lies about taking it into Mexico. He lies that his own car is over in Mexico being repaired. None of that's true. He tells those lies before they even suspect anything. False exculpatories. Absolutely. False stories. And, of course, the story keeps changing and mutating over time. He also he gives just some improbable accounts. For example, the $100 loan. He leaves that out at first, and then he says, well, I borrowed it from Ariana, who is apparently the main dope dealer here, because I was going to pay for some car repairs. Well, when they arrest him at the bridge, he has only $5 of that money left. He gives $50 to the lady with the car. He gives some to his wife. So that's just completely implausible. This court has a long line of cases that say implausible stories are indicative of guilt. How about working in denying knowing who had called him at the bridge? Yes. And they realize this later when they get the phone records. He says, you know, I was waiting to cross over the bridge, and Ariana calls me on this new and different number that I had never seen before. Well, the phone records belied that. There were some 21 contacts between that number and Muniz's phone beginning August the 22nd, which was eight days before his arrest. We also have the story about the rental house is also pretty strange. I don't know if this was brought out in trial or not, but I think it's something that's relevant. You know, they take possession of this rental house on August the 30th. They don't move in. They don't do anything. Well, you've got these drugs coming over August 31st. That's pretty convenient timing, too. Also, you have his furniture purchase. This is a guy who says he's unemployed, he's getting benefits. He goes down to the furniture store and obligates himself for a bigger payment. His payment goes from $114 to $180, and that shows that he knew that he was going to have money coming in from this drug deal. And finally, the high value of the drugs. What kind of an obligation was that? Was it a loan or something? It was sort of like a revolving credit account at a furniture store. He already had an account. Well, you don't get to put on your loan application that you're going to have some money coming in from your drug sales, do you? He already had the credit account. It was a matter of I think he had the arrangement if he wanted to go buy more furniture, he would just go buy, and I don't think they did another credit check. I don't know. So somebody determined he was credit worthy without regard for drug money. Yes. All right. That he was not worried about making a payment because he knew he had this illegal money coming in. And finally, the high value of the drugs. They weren't worried about him making a payment because they let him have the credit. I'm sorry? They weren't worried about him making a payment because they let him have the credit, didn't they? They let him have the credit in the past, and it just sort of continued. And there was a lot of testimony about over the years he would come in and he would buy more and he would pay it off, and he just sort of had a revolving open account. So anyway, it's just a piece of the puzzle. In your brief to us, you haven't, at no point have you said this was intrinsic to the conspiracy, correct? No. And in your brief to us, you didn't argue that it was relevant to knowledge of the co-conspirators. I do think it's relevant. I know you think it now, but you didn't argue that in your brief to us. You said it was relevant to intent and motive. Yes, intent, knowledge, and motive, yes. Knowledge of the participants, has that ever been articulated? I don't think so. Not specifically. And yet that looked like what the AUSA was saying in closing. You heard my questions to opposing counsel. Correct. Again, I think motive and intent and knowledge are sort of intertwined in this case, as they often are when you have a conspiracy. You know, there's never any direct evidence of what is in someone's mind, so we just have circumstantial evidence. And if I could just talk briefly about harmlessness, this is not the kind of evidence that modern jurors are going to find very shocking or horrible. And if that evidence had, in fact, moved them to act irrationally with respect to Mr. Muniz, they wouldn't have acquitted him on the two conspiracy charges. And there was a 404B limiting instruction given? Yes, there was. There was the full formal one given and the written jury instructions prior to closing argument. And then, of course, at the time that Agent Lada's testimony was admitted, defense counsel asked for a limiting instruction, and Judge Togley said, you know, so given or yes, she agreed. So, yes, they had two separate instructions on that. I think I'm going to yield the rest of my time, Issue 2. I'll just rely on my brief on that. All right. Thank you. Thank you. Butler? Let me begin first with the harmlessness question. And I noticed in the brief that Apelli had said, well, we're also used to drug use. It's just not anything that's shocking. I would suggest, in one way, it may misjudge the venue that we're in, and counsel knows the venue, but we're pretty socially conservative in many ways in the Valley. That's not in the record, is it? No, I just — It's not. But it's also not — let me deal with the harmlessness, though. Your Honors, it may be that the use of cocaine reflects on character more than anything. And if you can imagine a daughter brings home a young man, and he's got a great job, and he's smart, and he's handsome, but, by the way, he uses cocaine. It's a deal breaker. So for certain purposes, the use of cocaine is going to be extremely harmful. And in this particular case, we're dealing with a situation that I would urge that it's extremely harmful. Now, we — let me also talk about this whole thing about going to the furniture store. He had — he gets his loan up to about $180. He had been a welder. He had recently left. He was getting unemployment. They were willing to loan to him. And it's not — I would urge that we're not talking about, you know, buying gold-plated foxes. What is even more of concern than his increasing his revolving credit purchases is that he went and obtained his house for one of his charged co-conspirators and assured he would pay for the house or something along that line. And didn't he make a down payment on the house? He did. And of how much money? $500. Yes. And that is — that is extremely damaging to your case as far as harmless error goes. I think it's extremely damaging as to his character. I do believe that because I think — His character, he's buying what a reasonable juror could infer is the stash house for the drugs. Well, except that the evidence was contrary to that. How was it contrary? Well, he understood that he was helping somebody who was not a citizen get a house. Well, that's his testimony at trial. And the jury apparently didn't believe it. Well, I think it was pretty believable. I would submit to the court it was a pretty believable testimony. What they did know, though, is that he was a liar, I mean, to this landlady. And it hurt her. I think that that's where the falsehood came in. I would urge all of the statements, well, he lied about this and this and this, the only one who really made that judgment was Mejios. That's, I believe, how he will say his name, the agent. And I think that was extremely harmful. I mean, he interprets the statements that are made at the bridge, which are certainly ambiguous, because his wife, Mr. Munoz's wife, was over there with — so either to take or give money. I mean, none of this is a ridiculous story if you cross back and forth across the border on a regular basis. And the only really falsehood was he lied to the landlady. And I think that that did hurt him as far as their viewing of him. I've got to tell you, counsel, you're the first brief I've ever seen in 27 years on the bench that cites to a Catholic catechism by Pope John Paul II, Vatican City. I find that puzzling. Well, I hope I'm forgiven for that. I wrote it in the wee hours of the morning. I wanted to distinguish between these two types of activities. I believe one of them is a sin of avarice. The other one, we would confess, is a sin of gluttony. There's a lot of 404B law that we've got to make sure works together, and that's not discussed, the law, the complicated circuit, intracircuit law. What about the point opposing counsel brought up that a particularized verdict, along with two limiting instructions, would neutralize harm? Well, I ask for those limiting instructions, but I would urge that it's just not enough. What we then have instead of somebody who might be believed as a dissolute GED Coke user who married above himself and never really functioned. All right. Thank you, counsel. Your time has expired. The court will take this matter under advisory.